**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERARD LAFFAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No.  5:13-CV-04040-JLS |
| v. | |
| SANTANDER BANK, N.A., et al. | |
| Defendants. | |

**DECLARATION OF PETER A. MUHIC IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF CLASS REPRESENTATIVE, AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVAL OF SERVICE AWARD TO PLAINTIFF**

I, **PETER A. MUHIC**, hereby declare as follows:

1.      I am a partner with the law firm of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), counsel of record for Plaintiff Gerard Laffan ("Plaintiff").   I make this declaration in support of: (1) Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Appointment of Class Representative, and (2) Plaintiff's Unopposed Motion for Award of Attorney's Fees, Reimbursement of Expenses, and Approval of Service Award to Plaintiff.

2.      I have personal knowledge of the matters set forth herein based upon my active participation in all material aspects of the Action.

3.      On August 12, 2015, Kessler Topaz was appointed by the Court as Class Counsel for Plaintiff in this Action, along with Nix, Patterson & Roach, LLP ("Nix Patterson").   Class Counsel have prosecuted this class action litigation and negotiated the Settlement.

4.      The Settlement Agreement, dated as of July 24, 2015, ("Settlement Agreement"), provides for a monetary payment of $1,500,000.00 ("Settlement Fund") in addition to significant prospective relief, provides substantial benefits to members of the Settlement Class and resolves all claims asserted by Plaintiff in this Action.   A true and correct copy of the Settlement Agreement is attached as Exhibit A hereto.

I.      **COMMENCEMENT OF THE LITIGATION AND DISCOVERY TAKEN**

5.      Plaintiff filed suit on July 11, 2013, on behalf of a nationwide class, and New Jersey sub-class, challenging Defendants' lender-placed hazard insurance ("LPHI") kickback scheme.   Plaintiff brought claims for breach of contract, including the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violation of the New Jersey Consumer Fraud Act against Santander Bank, N.A ("Santander").   Plaintiff also brought claims against American

Modern Insurance Group, Inc. ("AMIG") and Atlas Insurance Agency, Inc. ("Atlas", and with AMIG, "AMIG Defendants") (Santander, AMIG and Atlas are collectively referred to as "Defendants") for aiding and abetting a breach of fiduciary duty and unjust enrichment.

6.      On September 9, 2013, AMIG and Atlas filed answers to the Complaint, *see* ECF Nos. 35, 36, and Santander filed a Motion to Dismiss. *See* ECF No. 37. On November 22, 2013, AMIG and Atlas filed a Motion for Judgment on the Pleadings. *See* ECF No. 48.

7.      On June 12, 2014, after the Motion had been fully briefed, the Court issued an Order and Opinion denying Santander's Motion to Dismiss in its entirety. *See* ECF Nos. 64, 66. On the same day, the Court also denied AMIG Defendants' Motion for Judgment on the Pleadings. *See* ECF No. 65. Santander filed an Answer to the Complaint. *See* ECF No. 67. AMIG Defendants filed a Motion to Certify a Portion of the Court's June 12, 2014 Opinion and Order for Interlocutory Appeal on July 2, 2014, *see* ECF No. 68, which the Court denied on September 18, 2014. *See* ECF No. 76. On March 30, 2015, the AMIG Defendants filed a Motion for Summary Judgment. *See* ECF No. 93.

8.      The Parties engaged in comprehensive discovery, including:  the negotiation of ESI search terms and custodians, a rolling production of more than 5,000 pages of documents, which included electronic records concerning Santander's LPHI practices and copies of the agreements and arrangements between Defendants, and the taking of two depositions including that of Plaintiff.

9.      Prior to exchanging discovery, the Parties entered into, and this Court approved, a Stipulated Confidentiality and Protective Order. *See* ECF No. 75. Significant discovery disputes then arose, which required extensive meet and confers as well as motion practice.

## II.   SETTLEMENT NEGOTIATIONS

10.     On April 7, 2015, the Parties filed a joint motion requesting that the litigation be stayed pending the outcome of the mediation.  On April 24, 2015, the Parties mediated the case before Jonathan Marks, an experienced and respected mediator with particular experience mediating lender-placed insurance claims similar to those underlying the litigation.  On May 1, 2015, the Parties reported to the Court that they had agreed to terms of a settlement in principle. *See* ECF No. 98.  The Parties continued negotiating the terms of the Settlement Agreement, which was finalized and executed on July 24, 2015.

11.     The Settlement Agreement is the product of extensive negotiations between the Parties.  During the course of the mediation, the Parties engaged in significant debate and exchanged and reviewed detailed information and analyses regarding their respective positions.

12.     Discovery provided by Defendants, including deposition testimony and contracts, indicated that Santander arguably received below-cost outsourced services from the AMIG Defendants, but not commissions or any reinsurance kickbacks.

13.     The Settlement was negotiated and entered into with a clear understanding of the strengths and weaknesses of Plaintiff's claims, as informed by:  1) the investigation relating to the events and transactions underlying Plaintiff's claims; 2) the aforementioned discovery produced by Defendants; 3) the review and analysis of other publicly available information concerning Defendants; 4) the depositions taken in this action regarding the claims asserted and class issues; 5) relevant case law; and 6) expert consultation.

14.     This settlement compares favorably with other court-approved lender-placed insurance settlements across the country.  *See, e.g.*, *Weller v. HSBC Finance Corp.*, No. 13-cv-0185 (D. Colo. Oct 19, 2015) [ECF No. 171] (final approval order); *Mahan v. Regions Financial*

*Corp.,* Case No. 14-cv-00321 (E.D. Ark. Oct 1, 2015) [ECF No. 64] (final approval order);

*Hamilton,* 2014 WL 5419507 (final approval order); *Hall,* 2014 WL 7184039 (final approval

order); *Fladell v. Wells Fargo Bank, N.A.,* No. 13-cv-60721, 2014 WL 5488167 (S.D. Fla. Oct.

29, 2014) (final approval order); *Diaz,* 2014 WL 5488161 (final approval order); *Casey v.

CitiMortgage, Inc.,* No. 5:12-cv-820, Dkt. No. 234 (final approval order); *Saccoccio,* 297 F.R.D.

683 (final approval order); *Pulley v. JPMorgan Chase Bank, N.A.,* No. 12-cv-60936, Dkt. No. 84

(S.D. Fla. Nov. 25, 2013) (final approval order); *Ulbrich v. GMAC Mortg.,* No. 11-cv-62424,

Dkt. No. 105 (S.D. Fla. May 10, 2013) (final approval order).

## III.    SETTLEMENT ADMINISTRATION

15.    After receiving competitive bids, the Parties jointly selected A.B. Data, Ltd.

("A.B. Data") to administer the Settlement.

16.    Pursuant to the Court's Preliminary Approval Order, the Class Notice was mailed

directly to Settlement Class Members, published through *PR Newswire*, and published on a

dedicated Settlement website.   A true and correct copy of the Declaration of Christina Peters-

Staziewicz, attesting to the administration of the Settlement by A.B. Data ("A.B. Data Decl."), is

attached hereto as Exhibit B.

17.    Class Counsel, through A.B. Data, also supervised the launching and maintenance

of the Settlement website, www.laffanforceplacedinsurancesettlement.com.  To date, the website

has received 998 "hits".  A.B. Data Decl. ¶¶ 17-18.  In addition, Class Counsel supervised the

launching and maintenance of a toll free, Interactive Voice Response ("IVR") hotline.  This IVR

was answered by an automated attendant and provided class members with an overview of the

Settlement and the option to request a Class Notice or leave a message for Class Counsel.  If

additional assistance was required, the IVR provided callers with the information necessary to

4

contact.  As of the date of this filing, the IVR received a total of 54 voicemails.  A.B. Data Decl. ¶¶ 15-16.

## IV.   ATTORNEY FEES AND EXPENSES

18.    Consistent with the law in the Third Circuit, Class Counsel are requesting an award of attorneys' fees and reimbursement of expenses from the Settlement Fund based on a percentage of the Settlement Fund.  Class Counsel makes an application to the Court for attorneys' fees in the amount of 33 1/3 % of the Settlement Fund, or $500,000.000, and the reimbursement of expenses incurred in connection with the litigation of this Action.

### A.    Settlement Results Relative to Risks

19.    As set forth in further detail in the Memorandum of Law in Support of Plaintiff's Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Approval of Service Award to Named Plaintiff (the "Fee Memorandum"), the $1.5 million Settlement Fund is an excellent result given the risks of not being able to establish liability considering the facts of this case, the difficultly in proving damages, and the high degree of uncertainty in this area of the law.

20.    The requested fee is eminently reasonable when viewed in light of the significant work Class Counsel has done in this litigation.  As detailed in the Fee Memorandum, and as explained below, Class Counsel have devoted 2,312 hours to the prosecution and Settlement of this Action.  Further, Class Counsel will remain involved in working with the Settlement Administrator and responding to Settlement Class Member inquiries through the implementation of the Settlement.

### B.    Skill Required and Quality of Work

21.    The skill and quality of Class Counsel also weigh in favor of approval of the

requested attorneys' fees. As set forth in further detail in the Fee Memorandum as well as the Memorandum of Law in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Appointment of Class Representative (the "Final Approval Memorandum"), Class Counsel undertook to represent Plaintiff in a still-developing area of the law and took on the substantial risk that they would not be compensated at all. Moreover, Class Counsel's efforts produced an excellent result which will greatly benefit the members of the Settlement Class.

22.     Kessler Topaz is well-regarded nationally and internationally for their successful representation of clients in complex, class action matters. A true and correct copy of Kessler Topaz's Firm Resume is attached hereto as Exhibit C.

23.     Kessler Topaz is also highly experienced in litigating complex, force-placed insurance cases, having been involved in numerous such cases. *See e.g. Weller v. HSBC Finance Corp.*, No. 13-cv-0185 (D. Colo. Oct 19, 2015) [ECF No. 171] (final approval order); *Mahan v. Regions Financial Corp.,* Case No. 14-cv-00321 (E.D. Ark. Oct 1, 2015) [ECF No. 64] (final approval order); *Finch v. PHH Mortg. Corp.,* No. 14-cv-1694 (D.N.J. Feb. 18, 2015); *Xi Chen Lauren v. PNC Bank, N.A.,* No. 13-cv-762, 2013 WL 5565511 (W.D. Pa. Oct. 8, 2013) *recons. denied,* 2013 WL 6123084 (W.D. Pa. Nov. 21, 2013)*; Smith v. SunTrust Mortg. Inc.,* No. 13-cv-0739, 2013 WL 5305651 (C.D. Cal. Sept. 16, 2013)*; Simpkins v. Wells Fargo Bank, N.A.,* No. 12-cv-00768, 2013 WL 4510166 (S.D. Ill. Aug. 26, 2013); *Gustafson v. BAC Home Loans Servicing, LP,* No. 11-cv-915, 2012 WL 7071488 (C.D. Cal. Dec. 26, 2012); *Gallo v. PHH Mortg. Corp.,* 916 F. Supp. 2d 537, 539 (D.N.J. 2012).

24.     Kessler Topaz was ably assisted by Nix Patterson, another highly-regarded and well-respected firm. *See* Nix Patterson firm resume, attached hereto as Exhibit D.

25.     Given the novel nature of the claims pursued, the legal uncertainties facing Class Counsel, the eminently qualified counterparts on the defense side, and most importantly, the excellent results achieved, the requested fee and reimbursement of expenses are reasonable.

### C.     Contingent Nature of the Fee and Financial Burden

26.     Class Counsel undertook to represent Plaintiff fully aware of the substantial risk that they would not be compensated at all.  As set forth in more detail below, Kessler Topaz incurred significant out-of-pocket expenses and expended 2,312 hours prosecuting and resolving this Action.

## V.     KESSLER TOPAZ'S LODESTAR AND EXPENSES

27.     The schedule attached hereto as Exhibit E is a summary indicating the amount of time spent by each attorney of my firm who was involved in this litigation.  The lodestar calculation is based upon my firm's current hourly rates.  The firm's rates have been approved by numerous courts around the country when awarding fees in class action cases.  For attorney(s) and/or employee(s) who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such attorney(s) on his or her final day of employment with my firm.

28.     As shown in Exhibit E, the total lodestar for my firm is $986,465.

29.     The hourly rates utilized by my firm in computing its lodestar are the usual customary hourly rates charged for consumer, breach of fiduciary duty and other complex litigation.  No upward adjustment in billing rate was made, notwithstanding the contingency and risk of the matters involved, the opposition encountered, the preclusion of other employment, the delay in payment, or other factors present in this case which would justify a higher rate of compensation.

7

30.     The time and services provided by my firm, for which fees are sought in the petition, are reflected in contemporaneously maintained records of my firm.  All the services performed by my firm in connection with this litigation were reasonable and necessary in the prosecution of this case.  No time is included in the fee petition for work in connection with the fee and expense application or accompanying documents, including this declaration.  Additionally, Class Counsel will incur time and costs in connection with implementation of the Settlement post final-approval for which they will not be compensated.

31.     My firm's lodestar figures also do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in the firm's billing rates.

32.     As detailed in the schedule attached hereto as Exhibit F, my firm has incurred a total of $34,588.04 in unreimbursed expenses in connection with the prosecution of this Action.

33.     The expenses incurred in this Action are reflected on the books and records of my firm.  These books and records are prepared from expenses vouchers, check records and other materials, and are an accurate, contemporaneous recording of the expenses incurred.

## VI.     SERVICE AWARD FOR NAMED PLAINTIFF

34.     Plaintiff respectfully requests that the Court grant a Service Award of $7,500 to Gerard Laffan.

35.     Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case-related service awards to plaintiffs who have instituted and prosecuted an action on the theory that there would be no class-wide benefit absent their suit.  The trial court has discretion to award an incentive award to the representative plaintiff.

36.     The Plaintiff expended substantial effort and significant time prosecuting this action over the last two years. The Plaintiff stepped forward and pursued the Class' interests by filing suit on behalf of the members of the Settlement Class, undertaking the responsibilities attendant with serving as a named plaintiff.

37.     From before the filing of the Complaint through the final approval process, Kessler Topaz was in regular contact with Gerard Laffan, keeping him apprised of litigation developments and gaining insight from his experiences with the lender-placed hazard insurance process.

38.     Plaintiff also produced nearly 500 pages of documents in responses to document requests served by Defendants in this Action, and provided verified Interrogatory Responses on August 13, 2014. Additionally, Kessler Topaz prepared the Plaintiff for deposition, which ultimately occurred on December 1, 2014.

39.     Class Counsel also provided Plaintiff with material filings, related documents and regular correspondence describing the progress of the case. Plaintiff also helped make strategic decisions, including negotiation and approval of the Settlement terms.

40.     Moreover, on January 12, 2015, the AMIG Defendants took the extraordinary step of serving a subpoena on Plaintiff's employer seeking Plaintiff's work emails. As courts have recognized, subpoenas sent to employers are often used as a "tool to harass" and risk harming the plaintiff's relationship with his employer -- particularly here where Plaintiff is employed by a financial institution. *See Hunsaker v. Proctor & Gamble Mfg. Co.*, No. 09-2666-KHV, 2010 WL 5463244, at *6 (D. Kan. Dec. 29, 2010). *See also* ECF No. 86 (Order quashing first subpoena served on Plaintiff's employer).

41.     Notwithstanding these pressures and demands, Plaintiff persevered with his claims and was able to negotiate this outstanding Settlement providing meaningful relief to thousands of Settlement Class Members.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 30th day of October 2015, at Radnor, Pennsylvania.


_____
Peter A. Muhic